UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH M. McMAHAN, JR., ) | |
| ) | |
| Plaintiff, ) | 06-2039 |
| ) | |
| v. ) | |
| ) | |
| NORTH AMERICAN LIGHTING, INC., ) | |
| ) | |
| Defendant. ) | |

ORDER

The plaintiff, Joseph M. McMahan, is a former employee of the defendant, North American Lighting, Inc. ("NAL"). He was hired in November 2003 to work in the warehouse at NAL's Paris, Illinois. Initially, McMahan's assigned work shift was from 3:00 p.m. to 11:00 p.m. In 2004, his hours changed and he began to work from 7:00 p.m. to 3:30 a.m. McMahan knew that NAL considered it "mandatory" for its warehouse workers to work overtime as needed.

NAL's "No Fault Point System" assesses points for unexcused absences from work. The program assessed one point against an employee whose unexcused absence totaled four hours or more, and half a point for an unexcused absence of less than four hours. If an employee received seven points in any twelve month period, his or her employment would be terminated. Arriving late and leaving early on the same day were treated as separate occurrences and one point would be assessed for the day. If the employee did not stay for overtime when required, he or she would be assessed half a point. McMahan admits that he was informed of the attendance policy when he was hired, and he knew how the program worked.

NAL employees also receive personal absence days ("PAD"). After the first year of employment, each employee receives twenty-four hours of unpaid PAD time which is credited on the employee's anniversary date. PAD time may be taken in increments of two hours, with requests for PAD time to be submitted in advance except in cases of emergency. According to NAL's Employee Guidebook, "Personal Absence Days do not count towards overtime."

Since childhood, McMahan has had a serious case of asthma.[1] McMahan does not think

---

[1] McMahan also has panic attacks and suffers from post traumatic stress syndrome. He claims that the medical conditions are interrelated and that one can cause the other. He also states he is "pretty positive" that in the summer of 2005 he gave his supervisor, Michelle Murphy, a doctor's note stating that he suffered from panic attacks and that his asthma and panic

1

that he had made any requests for FMLA leave before June 13, 2005; however, he does not dispute that, as of that date, he had been assessed a total of four points under the attendance program.² McMahan claims he had asthma problems in July 2005 and was absent for much of that month. McMahan picked up a FMLA package from NAL's Human Resources Department, had his treating physician complete the forms, and he turned them into his supervisor on or about July 26, 2005. He was approved for intermittent FMLA leave on July 27, 2005. Although McMahan states he missed some work prior to July 2005 due to asthma attacks, he does not believe (or does not remember whether) he ever told anybody at NAL about the asthma attacks prior to July 25, 2005.

McMahan characterizes his asthma condition as no worse after obtaining approval for intermittent FMLA leave than it was before. He does not remember whether he was ever absent in 2003 or 2004 due to asthma problems. However, McMahan had at least nineteen asthma attacks in August through October 2005 and was absent for part or all of nineteen workdays in that time. He claims he notified his supervisor and was granted FMLA leave each time.³

On November 10, 2005, McMahan took FMLA leave and went to the doctor about his asthma. The doctor's notes state: "Joe presents with exacerbation of asthma. He notes chest congestion, cough. He had to miss work. He is in no acute respiratory distress at rest and O2 sat at room is 95%. . . . Chest shows decreased air entry and expiratory rhonchi increased at right base. Respiratory rate 22. . . . Impression: Exacerbation of asthma." The note then discusses treatment for asthma, including an inhaler, Albuterol and nebulizer treatments, prednisone, Cefzil and a recommendation for a chest x-ray if the symptoms did not resolve.

McMahan returned to his doctor on December 14, complaining of shoulder pain. The doctor wrote three notes on prescription medication forms. The first simply says, "Has had recent worsening of asthma recurring absence from work." The second says, "Light Duties - X 2 weeks. No lifting over 15 pounds. No repetitive movement. L Shoulder. DX Bursitis L Shoulder." The third says "Recent episode of anxiety was related to exacerbation of asthma. 12/1/05."

---

attacks exacerbated each other. He did not file FMLA paperwork in regard to his panic attacks or post traumatic stress syndrome.

² McMahan Dep. 35-36. The points were assessed for absences on May 16 and 20; June 8 and 13, 2005.

³ McMahan's testimony is confusing and contradictory but it appears he agrees he was granted FMLA leave. He "supposed" it was true; then he said, "not every single time." McMahan Dep. 57. Finally, when asked, "So as of October 24th of '05, you had been granted FMLA every time you had said you had had an asthma attack; it had been granted up to that point, right?" McMahan replied, "Yeah." McMahan Dep. 59.

The doctor's December 14 treatment notes mention increased anxiety and panic attacks and increased pain in his left shoulder. Other than a notation that McMahan's chest showed "decreased air entry with rare rhonchi,"[4] there is no indication that the doctor noted a worsening of asthma or that asthma caused McMahan to see the doctor that day. During the visit, McMahan didn't tell his doctor about the asthma attack he claims to have had hours earlier, even though it was so severe it required him to leave work, because he had asthma attacks "all the time."

After accumulating unexcused absences on December 1, 6 and 14, 2005, McMahan was terminated for having accumulated seven points in one year. McMahan claims the points were wrongly assessed because those absences were due to asthma and/or related anxiety. NAL contends the points were warranted and denies it interfered with McMahan's FMLA rights.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988). Once the movant has done so, the party opposing the motion bears the burden to respond, not simply by resting on the pleadings, but by affirmatively demonstrating that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324.

In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). "If [the non-movant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the non-movant]." *See* Fed. R. Civ. P. 56(e).

The FMLA entitles eligible employees to take leave for a period of up to twelve weeks in any twelve-month period because of a serious health condition. 29 U.S.C. § 2612 (a)(1)(D). It is unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to

---

[4] The significance of this notation is not known. It may indicate that McMahan's asthma was a chronic (rather than intermittent) breathing impairment. On the other hand, it might indicate that McMahan's ability to breathe was correlated to his cigarette smoking.

exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). It is also unlawful to "discharge or in any other manner discriminate against" an employee who exercises or attempts to exercise his rights under the FMLA. 29 U.S.C. § 2615(a)(2).

NAL argues it is entitled to summary judgment because McMahan's termination was caused by his accumulation of seven points under the attendance point system, and his FMLA leave had nothing to do with his termination. According to NAL, McMahan accumulated some of those points by refusing to work mandatory overtime.[5] McMahan contends that those points were assessed for FMLA-related absences.

The court's inquiry on summary judgment is limited to the existence, or not, of a dispute of material fact. Consequently, the only relevant absences are those that McMahan accumulated after NAL approved his FMLA leave request. NAL supports its motion with detailed copies of McMahan's attendance records. McMahan accumulated four of the seven points before July 25, 2005.

McMahan complains about the fairness of assessing points for his absences on October 21 and 31, 2005, at half a point each. He has no clear recollection of the October 21, 2005 absence and cannot refute NAL's contention that it was not FMLA-related. McMahan does recall the October 31, 2005, absence; he took his children trick-or-treating and decided to go to work late. McMahan argues that he should have been allowed to take PAD time for both those instances; however, McMahan had exhausted his PAD allotment[6] and had not yet received the PAD allotment for the anniversary year that began November 11, 2005. By the end of October, McMahan had accumulated five points.

Once he received his annual PAD allotment, McMahan used PAD leave five times between November 15 and November 29, 2005, to avoid working mandatory overtime. His wife had begun a new job and needed to leave for work in the morning, so he had to go home and take care of his children. McMahan Dep. 140.

In late fall 2005, supervisor Michelle Murphy told McMahan that he and other employees in the department would not be able to continue to use PAD time to avoid mandatory overtime.

---

[5] NAL contends, and McMahan does not deny, that McMahan was warned about his refusal to work mandatory overtime. McMahan's wife accepted a job that required her to leave early in the morning, and NAL suspected that McMahan used his asthma as an excuse to leave work to babysit for his children.

[6] When deposed, McMahan stated, "as far as I thought, yeah, I did [have PAD time available]." McMahan Dep. 131. He admits he came to that conclusion, "just by memory." However, when asked how many PAD hours he thought he had left, he answered, "I don't know." McMahan Dep. 132.

4

When asked if McMahan denied being told that, he responded, "I don't remember."[7]

### December 1, 2005 absence

On December 1, McMahan was late for work (using two hours of PAD leave), stayed two hours, and then left. McMahan does not remember telling his team leader or supervisor, either that night or the next night, that he needed to leave because he was having an asthma attack. He says it is possible he did tell someone, but he couldn't recall. He was assessed one point for missing more than half his shift, bringing his total to six points.

NAL denies that McMahan told anyone that he was absent due to asthma. The only evidence to indicate that McMahan told anyone the reason for his December 1 absence is the doctor's note written two weeks later, on December 14. The doctor had no independent contemporaneous knowledge of McMahan's December 1 anxiety/asthma attack; instead, he relied on what McMahan told him on December 14.[8]

### December 6, 2005 absence

On December 6,[9] McMahan worked until 3:36 a.m. but did not work mandatory overtime. He was assessed half a point, bringing his total to six and a half points. McMahan contends the time should have been considered FMLA leave because he was having an asthma attack:

Q: Do you recall calling in on the night of the 6th or the 7th or both, and telling someone you were having an asthma attack?

A: No, I don't recall.

---

[7] Murphy stated that everyone she supervised was told that PAD time could not be used to avoid overtime because "they would just all want to take PAD and leave, but we had to have somebody there. On [McMahan's] shift there was only two guys that worked those hours. . . . So they were not allowed to take PAD any more to cover for not working overtime." Murphy Dep. 56. Although the Employee Guidebook states that PAD leave could not be used to excuse mandatory overtime, it appears that this policy was relaxed for a period of time, until Murphy notified her subordinates that the rule would be enforced consistent with the Employee Guidebook.

[8] The note is based on McMahan's out-of-court statement of his "past [medical] symptoms," but it does not constitute an exception to hearsay because McMahan's statement was not "made for the purposes of medical diagnosis or treatment." F.R.E. 803(4).

[9] McMahan's regular shift began at 7:00 p.m. on December 5 and was scheduled to end at 3:30 a.m. on December 6, not including mandatory overtime hours.

Q: Do you think you did?

A. I don't know.

NAL claims that McMahan never told anyone that he was medically unable to work the mandatory overtime shift. McMahan's lack of memory as to the events on December 1 and 6 is remarkable. He was deposed one month after he responded to NAL's interrogatories, and his answer to Interrogatory 7 recounts with great specificity the people to whom he reported his asthma attacks as well as their subsequent comments or acts. However, McMahan cannot rely on his own answers to interrogatories to create an issue of fact; "a party's own statements are hearsay when offered to prove the truth of the matter asserted, and . . . they fall within no recognized hearsay rule." *Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 803 (N.D. Ill. 1996) (*quoting* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2180).

### December 9, 2005 warning

On December 9, 2005, Murphy met with McMahan to discuss his attendance. Murphy advised him that as of December 5, he had accumulated six points under the attendance program. Murphy had him sign a form indicating that he had been warned. (This did not include the half-point assessed on December 6.) McMahan checked the line marked: "I disagree with the company statement for the following reasons." (No reasons were indicated.) That checkmark was scratched out and the line above it was checked: "I concur with the company statement." McMahan admits he made the checkmark to indicate his concurrence, and his signature is shown on the bottom of the form, but he doesn't recall anything about the conversation. When asked if he agreed that the form was presented to him on December 9, 2005, he responded, "I believe so."

### December 14, 2005 absence

At the end of his shift on the morning of December 14, 2005, McMahan was drafted to work mandatory overtime until 7:00 a.m. He left work at 5:15 a.m. and was assessed half a point. McMahan states that he left work because he was having an asthma attack. In contrast to the occurrences on December 1 and 6, he is certain that he told someone, probably Murphy, that he was having an asthma attack.

McMahan did visit his doctor later that day, but the purpose of his visit was unrelated to asthma, panic attacks or post-traumatic stress disorder. The doctor's notes indicate that McMahan sought treatment for his shoulder, and while there, the doctor checked McMahan's breathing. At that point, apparently relying on McMahan's statements that he had been absent due to asthma, the doctor wrote several notes excusing him from work on December 1, noting

"recurring absences" from work due to asthma,[10] and limiting his ability to lift heavy items.

Of the December absences, only the December 14 absence presents a genuine issue of material fact. McMahan can't recall if he told anyone at NAL, at any time prior to his termination, that his absences on December 1 and 6 were pursuant to FMLA-protected leave. McMahan has not provided any admissible evidence to show that anyone had any reasonably contemporaneous knowledge that he was suffering from anxiety/asthma attacks on those dates. However, on December 14, McMahan visited his doctor, and although the visit appears to have focused on his shoulder, the doctor did note some breathing anomalies and wrote out two notes relating to McMahan's asthma. Although the note pertaining to an asthma attack some two weeks earlier is insufficient to create the existence of a factual dispute, it does substantiate this much: McMahan and his doctor had at least a minimal discussion on December 14, 2005, about McMahan's asthma.

Consequently, the motion for summary judgment is denied. McMahan accumulated a half point for the December 14 absence – the absence that pushed him to the seven-point limit, causing his termination. The dispute of material fact as to the cause of that absence requires resolution by the jury, not the court.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [#19] is denied. The motion to strike the defendant's reply memorandum [#28] is also denied.

Entered this 17th day of April, 2007.

**s/Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[10] It is uncontested that McMahan took FMLA-related leave for his shifts beginning at 7:00 p.m. on December 6, 7 and 9.